IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil No. 1:99CV400

FILED APR 19 2004

| | |
|---|---|
| MELISSA JENNINGS, | ) |
| Plaintiff, | ) |
| | ) AFFIDAVIT OF |
| v. | ) RICHARD A. BADDOUR |
| UNIVERSITY OF NORTH CAROLINA at CHAPEL HILL, *et al.*, | ) |
| Defendants. | ) |

I, Richard A. Baddour, do depose and say:

1. I am, and have been, Director of Athletics at the University of North Carolina at Chapel Hill (UNC-CH) since July 1, 1997. I am a named defendant in this action.

2. In my capacity as Director of Athletics, I oversee the operation of all UNC-CH intercollegiate athletic programs.

3. I first became aware that Craig Jennings, father of Melissa Jennings, a member of the UNC-CH women's soccer team (the team), was claiming that Anson Dorrance, head coach of the team, had made inappropriate comments of a sexual nature to women on the team in May 1998. Around that time, I spoke to Susan Ehringhaus, Assistant to the Chancellor and Senior University Counsel, and reviewed a letter from Mr. Jennings to Ehringhaus and Ehringhaus's

1

response. Prior to Mr. Jennings' complaint, I had never heard any complaints or allegations related to inappropriate sexual comments or conduct by Dorrrance or any member of the team staff.

4. Immediately after receiving the complaint, I directed Beth Miller, Senior Associate Director of Athletics, to conduct a review of Jennings' complaints and to speak to Dorrance.

5. On or about May 26, 1998, I attended a meeting with Craig Jennings, Melissa Jennings, Miller and Ehringhaus. During that meeting, Jennings made a number of complaints about Dorrance.

6. Sometime after that meeting, I met with Dorrance to discuss Jennings' allegations. By that time, I understood that Dorrance had acknowledged that he had participated in group discussions during which he teased or joked with the players about their relationships with men and sexual activities. Dorrance insisted that he did not initiate those comments and he never asked players about sexual activities in one-on-one discussions .

7. At that time, I decided that, since Melissa Jennings had been offended by Dorrance's participation in the players' discussions about their relationships with men and sexual activities, Dorrance should apologize for his conduct. I also determined that it was inappropriate for a coach of a UNC-CH athletic team to engage in discussions of those topics with players, even when that participating is in a joking or teasing nature. I was concerned that such conduct created the potential for misunderstandings and could be embarassing for the players. In

2

light of those facts, I did not believe that such conduct was consistent with UNC-CH's high expectations for coaches. Therefore, I also decided that Dorrance should stop joking and teasing with the players about those subjects. Dorrance agreed and accepted my decision.

8. On June 9, 1998, Dorrance and I sent a letter to Craig Jennings which included UNC-CH's response to his complaints. Consistent with my decision, Dorrance extended an apology to the Jennings for his conduct. Exhibit A, # 00249 - 00250 is a copy of the letter we sent to Jennings.

9. On June 10, 1998, I sent Dorrance a letter in which I officially notified him that I considered it inappropriate for him to have conversations with players, either individually or in groups, about their sexual activities. I directed Dorrance to correct his behavior. Exhibit B, # 00259.

10. On July 23, 1998, I sent a memo to Judith Scott, the UNC-CH Sexual Harassment Officer, in which I outlined Jennings' complaints related to issues of a sexual nature and the Department of Athletics' response to those complaints. Exhibit C, # 1164.

11. During the time that we were reviewing Jennings' complaints, the Department of Athletics was also reviewing complaints from Judy and Ron Keller, parents of Debbie Keller, another player on the team. The Kellers had previously raised a number of complaints about issues including scholarships, hospital bills and problems they had securing a custom built shoe for their daughter.

12. I did not hear that the Kellers were complaining about anything related to issues

of a sexual nature until after the Jennings had complained that Dorrance had made comments of a sexual nature to Melissa Jennings.

13. During the summer, UNC-CH staff worked with Judy and Ron Keller to try to arrange a time and a place for Ehringhaus and me to meet with them to discuss and secure more detail regarding their complaint.

14. On July 28, 1998, I wrote to Judith Scott to apprise her of the Keller's complaint and the efforts we were making to secure a meeting with them. I also noted that I had already written to Dorrance about the issue of commenting on the players' boyfriends or sexual activities. Exhibit D, # 1076

15. We received a draft of the complaint from Jennings' and Kellers' counsel in August 1998. After that, I did not make any further efforts to meet with the Kellers.

16. In September 1998, I initiated a policy in the UNC-CH Department of Athletics which required the head coach to report to Miller, Larry Gallo (another Associate Senior Athletics Director) or me any report or correspondence regarding safety, hazing or sexual harassment. Exhibit E, # 688. The Department of Athletics also adopted a response plan for addressing reports of sexual harassment. Exhibit F, # 686-687.

17. I am an adult over eighteen years old, make this affidavit of my own free will, and state facts within my personal knowledge and/or based on the business records attached hereto.

18. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 15TH day of April 2004.

_____
Richard A. Baddour, affiant

5

# UNIVERSITY OF NORTH CAROLINA
# DEPARTMENT OF ATHLETICS

Richard A. Baddour
Director of Athletics

June 9, 1998

Mr. Craig Jennings
303 East Main St.
St. Charles, IL 60174

Dear Mr. Jennings:

As I indicated to you, I am responding to our meeting as well as to your follow-up letter to Susan Ehringhaus.

Any unwelcomed discussions, including jesting, regarding sexual activity and team members' relationships with men are inappropriate in the context you described. While Coach Dorrance strongly denies that he has ever discussed an individual team member's sexual activity in a one-on-one discussion, Coach Dorrance has acknowledged that he participated in group discussions of a jesting or teasing nature with soccer team members. This is altogether inappropriate. While his actions were not intended to be offensive, he now realizes that his involvement in such discussions is inappropriate, and he will immediately discontinue that activity. Appropriate interventions have also occurred with Coach Dorrance to address these unacceptable conversations.

The University and Coach Dorrance apologize for the "money issue." He has maintained that he did not intend to embarrass Melissa in any way. He recognizes that he offended her and used poor judgment and for that he apologizes.

Coach Dorrance also realizes that his dismissal of Melissa was ill-timed, and he apologizes for the untimely discussion during the exam period.

Coach Dorrance acknowledges the contents of this letter and indicates his apology by signing it as indicated below.

He also understands that alcoholic beverages must not be allowed at any activity involving team members and he will enforce that policy.

_____
Coach Anson Dorrance

EXHIBIT A

University of North Carolina Department of Athletics / PO Box 2126 / Chapel Hill, North Carolina 27515 / 919-962-6000 / (FAX) 919-962-7490

Case 1:99-cv-00400-NCT   Document 120   Filed 04/19/04   Page 6 of 13

Mr. Craig Jennings
June 9, 1998
Page Two


Lastly, Anson Dorrance has represented this institution with class and dignity for many years. His achievements are well-documented and known. He has a wonderful ability to develop student-athletes on and off the field. Many of his former players are devoted to him and to the program he has led. It is important for you to know from me that I am committed to him. Yet it is also true that there can be mistakes and errors of judgment that need correction.

Thank you for bringing these matters to our attention. All programs can do better and Melissa's courage to speak out have helped and will help us get better. Thanks.

Sincerely,

Richard A. Baddour

Coach Anson Dorrance          June 9, 1998
                              Date

cc: Chancellor Michael Hooker
    Coach Anson Dorrance
    Ms. Susan H. Ehringhaus
    Dr. Beth Miller

# UNIVERSITY OF NORTH CAROLINA
## DEPARTMENT OF ATHLETICS

Richard A. Baddour
Director of Athletics

June 10, 1998

Anson Dorrance
Head Coach
Women's Soccer

Dear Anson:

As I indicated to you in our last meeting I am writing to officially notify you that it is inappropriate for you to have conversations with members of your team (individually or in any size group) regarding their sexual activity. Please refer to my letter of June 9, 1998 to Craig Jennings.

Also, it is my expectation that all consumption of alcoholic beverages will cease at any soccer activity as well as on trips.

You know how much I appreciate you and what you have accomplished. I truly regret that this issue has developed and I know that you will do all that you can to see that it is corrected.

Sincerely,

Richard A. Baddour


EXHIBIT B

University of North Carolina Department of Athletics / PO Box 2126 / Chapel Hill, North Carolina 27515 / 919-962-6000 / (FAX) 919-962-7490

# UNIVERSITY OF NORTH CAROLINA
## DEPARTMENT OF ATHLETICS

Richard A. Baddour
Director of Athletics

**MEMORANDUM**

TO: Judith Scott

FROM: Dick Baddour

DATE: July 23, 1998

RE: Harassment Allegation by Melissa Jennings and Mr. Jennings

At the end of the 1998 spring semester, Coach Anson Dorrance dismissed Melissa Jennings, a sophomore, from the UNC Women's Soccer team. Melissa and Mr. Jennings, her father, disputed the dismissal. Following the dismissal, in a letter dated May 12, 1998 to Susan Ehringhaus, Mr. Jennings alleged prior harassment to Melissa from Coach Dorrance. Mr. Jennings based this on the following comments they alleged Coach Dorrance made to Melissa:

1. Do you have a boyfriend?
2. Are you sleeping with him?
3. Are you "shacking up" with him?

On May 26, 1998, Susan Ehringhaus, Anson Dorrance, Beth Miller and I met with Melissa and Mr. Jennings at my office. At this time Mr. Jennings expressed that these comments were made by Coach Dorrance both in the presence of the team and also during an individual conversation with Melissa.

Coach Dorrance indicated he has engaged in such conversation in a team setting in a jesting or teasing manner, but strongly denied he ever discussed Melissa's, or any other team member's, sexual activity in a one-on-one discussion. He commented that he had joined with the team in this kind of jesting.

As a result of this, I addressed the issue with Coach Dorrance and sent him a letter which was put in his personnel file, expressing that it is inappropriate for him to have conversations with members of the women's soccer team (individually or in any size group) regarding their sexual activity. On June 9, 1998, Coach Dorrance and I also wrote a letter to Mr. Jennings to this effect.

If you have any questions, please let me know.

cc: Susan Ehringhaus
    Beth Miller


EXHIBIT C

University of North Carolina Department of Athletics  PO Box 2126  Chapel Hill, North Carolina  27515  919-962-6000  (FAX) 919-962-7190

# UNIVERSITY OF NORTH CAROLINA
## DEPARTMENT OF ATHLETICS

Richard A. Baddour
Director of Athletics

## MEMORANDUM

TO: Judith Scott

FROM: Dick Baddour

DATE: July 28, 1998

RE: Sexual Harassment Comments

On May 13, 1998, in a telephone conversation with Susan Ehringhaus, Mr. Ron Keller, father of Debbie Keller, a former UNC Women's Soccer player, made reference to sexual harassment by Coach Anson Dorrance to Debbie Keller. Susan questioned him regarding the accusation and he said Anson made numerous remarks of a "sexual nature", such as questioning Debbie regarding "who are her boyfriends" and the like. He gave no more details. Mr. Keller also used the word "stalking" when referring to Coach Dorrance's behavior and explained that what he meant by that word was that Anson "won't quit and leave them (the students) alone". He said that Anson was "confronting young women and they are intimidated" by his confrontational manner. Susan assured him the university takes such claims very seriously. On June 5, 1998, Beth Miller called your office to alert you of this sexual harassment comment made by Mr. Keller

In August, Susan and I plan to meet with Mr. and Mrs. Keller and will further inquire as to exactly what they are alleging. If you have any questions, feel free to contact me.

Coach Dorrance has received a letter from me (see letter re: Jennings) regarding this situation. I will meet with him to further discuss the situation.


cc: Susan Ehringhaus
    Beth Miller ✓


EXHIBIT D

University of North Carolina Department of Athletics · PO Box 2126 · Chapel Hill, North Carolina 27515 · 919-962-6000 · (FAX 919-962-7400)

# UNIVERSITY OF NORTH CAROLINA
## DEPARTMENT OF ATHLETICS

Richard A. Baddour
Director of Athletics

## MEMORANDUM

TO: Head Coaches

FROM: Dick Baddour

DATE: September 30, 1998

RE: Policy on Safety and Harassment

As of today I am initiating the following policy:

> <u>Any</u> report, comment or correspondence made to a coach (head or assistant) regarding safety or harassment issues should be reported as soon as possible to Dick Baddour, Larry Gallo or Beth Miller. Harassment refers to sexual or hazing.

I am initiating this policy as a result of the climate we live in today. The purpose of the policy is to provide protection to members of our coaching staffs by broadening the base of those who can help resolve these issues.

Please inform your assistants of the policy. They are required to report such occurrences to you and you should follow the procedure as described above.



EXHIBIT E

University of North Carolina Department of Athletics · PO Box 2126 · Chapel Hill, North Carolina 27515 / 919-962-6000 (FAX) 919-962-7190

10/1/98 so mailed

688

# UNIVERSITY OF NORTH CAROLINA ATHLETIC DEPARTMENT

# RESPONSE PLAN TO SEXUAL HARASSMENT COMPLAINT

I. All head coaches must adhere to the following policy:

<u>Any</u> report, comment or correspondence made to a coach (head or assistant) regarding safety or harassment issues (including sexual harassment, hazing, or other forms of harassment) should be reported as soon as possible to Dick Baddour, Director of Athletics; Larry Gallo, Senior Associate Athletic Director; or Beth Miller, Senior Associate Athletic Director.

II. When a sexual harassment complaint is reported to either of the above individuals, the following response plan will be followed:

  A. If reported to either of the Senior Associate Athletic Directors, the Director of Athletics will immediately be informed.

  B. If appropriate according to the Sexual Harassment Policy and Procedures of The University of North Carolina at Chapel Hill, the Director of Athletics or his designee will begin Administrative Review Procedures as stated in the Policy.

  C. During the Administrative Review process, a previously appointed committee of athletic administrators and faculty may serve in an advisory capacity to the Director of Athletics if deemed appropriate by the Director of Athletics and may be consulted by the Director or the person conducting the Administrative Review or asked to participate or conduct the investigation.

  D. If the investigation results in a finding of sexual harassment, the above mentioned advisory committee may be consulted regarding disciplinary action.

  E. After consultation with the UNC Sexual Harassment Officer, or other appropriate University official, any appropriate disciplinary action will be taken and the remainder of the Administrative Review procedures followed.


EXHIBIT F

III. A. When a complaint of safety or harassment issues is reported to either of the Senior Associate Athletic Directors, the Director of Athletics will be immediately informed.

B. The Director shall initiate such review processes as are appropriate under the circumstances, consistent with applicable University policy, and may use the committee referred to in Section II.C., above, in ways described therein.

C. The Director shall take such action as he deems appropriate, if any, following his review.

687

Case 1:99-cv-00400-NCT   Document 120   Filed 04/19/04   Page 13 of 13